Mr. Compton, you can proceed when you're ready. Thank you, Your Honor, and may it please the Court, my name is Nicholas Compton, and I represent the appellant in this case, Talten Hall, Jr. In this case, Mr. Hall entered a guilty plea pursuant to a written plea agreement to one count of possession of a firearm in connection with a drug trafficking crime under 18 U.S.C. 924 C1A. His guideline range was determined by the district court to be the mandatory minimum sentence of 60 months, which is the sentencing range dictated by the guidelines. At sentencing, both Mr. Hall and the United States argued for a guideline sentence of 60 months. The district court, sua sponte, imposed a sentence of 84 months, representing a 24-month upward variance. Mr. Hall asserts that in imposing this sentence, the district court committed procedural error in that it failed to consider his non-frivolous sentencing arguments, including the conditions of his pretrial confinement and his attempts while in the jail to rehabilitate by taking some online courses. I just want to confirm what you just said because it confirmed what I thought. So despite there is one sentence in your brief that suggests the sentence was substantively unreasonable, but you are not inserting, asking us to reverse on the grounds that the sentence is substantively unreasonable. That is correct, Your Honor, and I as well saw that. Okay, no problem. I just want to confirm. Yes, Your Honor, that's correct. As the court is aware, sentences imposed by the district court are reviewed for reasonableness under abuse of discretion standard. In determining procedural reasonableness, this court is to consider whether the district court properly calculated the sentencing guidelines, gave the parties an opportunity to argue for an appropriate sentence, considered the 3553A sentencing factors, and sufficiently explained the sentence. Procedural error includes failing to calculate those sentencing guidelines accurately, treating the guidelines as mandatory, failing to consider the 3553 factors, selecting a sentence that's based on clearly erroneous facts, and for our purposes, we believe here today, failing to adequately explain the chosen sentence. And just again, to continue to isolate the issue before us, you agree that none of those things before the last one is triggered here? I would agree with that, Your Honor. Okay, so the district court calculated the guidelines correctly. The district court did not identify any reason that was illegitimate. And the district court did not, unless to the extent the district court failed to consider one of your client's arguments, the district court did not inadequately explain why it was doing what it was doing, other than possibly not explaining why it was redirected. Right, I mean, I guess I'll just say, as I'll tell you, to me, the hard thing about this case is this is an extremely thorough sentencing hearing. We constantly review sentencing hearings where district court judges are way less thorough than this and way less engaged with the defendant's arguments than this, and we affirm many of those sentences. So I mean, I think on balance, this district court judge did a terrific job, and honestly, an unusually good job at engaging with the defendant's arguments. But your argument is, but we also had some arguments that the court didn't mention, and that, to me, is the sort of central tension in this appeal. And I agree, Your Honor. I can't stand up here. This was not a perfunctory sentencing hearing. That's correct, Your Honor. And I can't make that argument before the court here today. I believe Judge Grove did explain, again, why she imposes sentencing. Right, so sometimes you read these, and you wonder from a little d, little p, I'm not saying, well, it would violate the Fifth Amendment or the Fourteenth Amendment, but from a due process of what, obviously, we're about to explain to a human being why he's going to lose his liberty for a certain amount of time. That's a big deal, right? And sometimes you read these sentencing transcripts, and you come away with, like, I don't even really know why the district court did what it did. And I imagine that, from the defendant's perspective, that feels pretty unfair, that I don't know why. I don't know how anyone could have come away from this sentencing hearing not understanding why Judge Grove picked the sentence that she did. I don't disagree with that, Your Honor. But I do agree that we have an additional, I think, issue here for, well, for a couple of reasons. I believe here we have a different scenario in the sense that the district court, again, on its own, imposed an above-guideline sentence. But that, I think, doesn't really matter any. Once there's, well, I mean, I guess it matters some, but I just think you have this lurking substantive, you have, there's this lurking feel to your argument that this sentence is maybe substantively unreasonable, but you don't want to argue that. And I'm not saying I'm criticizing you for that, because it strikes me as pretty obvious that a substantive reasonableness challenge would not succeed, because Judge Grove basically said, quite rightly, this very easily could have been an attempted homicide prosecution. And once you think of it that way, it's hard to argue that 84 months is substantively unreasonable. But walk me through why, just that we've said that in the procedural context, if you're going to go up, you have to give more reasons than if you're not going to go up. And I think also that you have to, and I think the court's precedents in this area say that these are non-frivolous arguments. I don't believe the government is necessarily contesting that they are non-frivolous arguments. And if they are non-frivolous arguments, then the court has to address those in the context of- Is that the law? I think our precedent says the court has to consider them, right? I think that my reading of the court's precedents in Perez-Paz and in the Shields case, which I will note I did not, was not cited. It's a recent case. I did not cite that in my brief. But it relies on Blue. It relies on Ross. It relies on Lynn, which are cited in the brief. Those cases all say that, yes, the court has to consider it, but the court has to give, there has to be enough on the record for a reviewing court to be able to look at the record and say that the court did consider it. Right. We have to be able to know that the district court considered all of your non-frivolous arguments. That doesn't mean the court had to specifically address them all and explain why she didn't find them persuasive, but she has to consider them all. And you need to point us to something in the record that shows she didn't consider it, right? What is your evidence she didn't consider these arguments? Well, I think the evidence, Your Honor, is that she didn't discuss them or- She definitely discussed them. So when it comes to Jimmy Lambert, right, the fact that your client was attacked by another inmate, she named the inmate by name and said, Jimmy Lambert, who was the guy who attacked your client, I don't know how he was roaming around at this jail. I sentenced him. She clearly was aware of that argument, right, and considered it. Counsel, I don't know if it was you, but whoever was representing your client at the time mentioned the conditions. Your client contracted COVID and counsel was mentioning the conditions at this jail are not great. You know, it's kind of unsanitary. And counsel said, you are very aware, Judge, of the conditions at Eastern Regional Jail, right, which seems to acknowledge that she was aware of the conditions of confinement. She was aware of what had happened to him. And the argument in the briefs and the argument at oral argument to the judge at sentencing were just, these things happened. There was no, like, therefore his sentence should be reduced by a certain amount or anything. It was just like, these things happened. She acknowledged they happened. How can I infer from the fact that she explicitly talked about these factors that she didn't consider them? Well, Your Honor, our position is that just by making an, essentially an interjection in my argument that she didn't understand how a previous federal inmate who she had imbued that statement with any consideration of how that might apply, then, which is what we were suggesting, both in our oral argument and in our sentencing memo, how that might relate to his personal history. But doesn't the fact that she acknowledged those arguments were made, and I mean, there wasn't much said about what the implication of it was from counsel, but the fact that she acknowledged those arguments were made shows us she read the briefing, she listened to the arguments at sentencing, she considered it, right? Now, we don't require district courts to then provide a paragraph of explanation of why they're rejecting each argument. We have to understand that they considered it, and we typically look for them to address, like, the major arguments, which here seem to be that he's kind of outside the norm of this, of this offense. Well, I believe, and I think the government tries to make that point in their response. I would disagree that there was a central thesis or a central tenet to the argument that these are, that this 924c case wasn't the same as others. That was an argument, and we made the argument as part of our... It was the lead argument in both the sentencing memorandum and at the hearing, right? That's what I started off with. This is not a typical 924 case. That was the argument that led off in both of those things. Yes, that's correct, Your Honor. But I don't believe that that transforms it into the central argument. It's what I started with. And it's also very, it's also, by the way, it's just, it's very clear why the district court rejected that argument, right? The district court made very clear, I reject the premise that this is not a typical case under the statute. Sure, absolutely. And I think that that's what we were looking for here with regard to this part of the personal history and characteristics of the defendant. Did she consider this? We don't believe that the one statement that she made did, and if she did consider it, why she was rejecting it. So we've already talked, so we've talked about the conditions. Can we talk about the anger management issue? Because again, the district court very clearly engages with what the district court very clearly thought is a record that reveals that the defendant has serious anger management problems because the district court identifies it as a major reason for the district court to reject the sentence. Now, the flip side is it does, the district court does not acknowledge that he had taken this anger management class that's mentioned both in your filings and at the hearing. But, but what, the district court is not like unaware of like what is the defendant's anger management capacity, right? The court clearly talked about that too. I agree, Your Honor. Our position is, is that these were, because these were non-frivolous arguments that no one seems to dispute. The non-frivolous, just on the anger management, the non-frivolous is, if you're going to give me a harsher sentence because I have anger management issues, you should then give me credit for the fact that I have done something to try to address them. Exactly. I believe that goes to, and I believe we argued that that goes to. And that was one hour, right? That class? And I'm not suggesting that the court couldn't consider it and reject it. Could we find it harmless if she didn't consider it because it's so miniscule? Well, and, and I think the, the, the Shields case that relies on Blue and that relies on Ross also talks about how the harmless error consideration is not applicable when you have non-frivolous arguments that the court, in our opinion, again, did not consider or did not acknowledge that they considered and rejected, particularly in imposing a sentence above the high end, above the guideline. As Judge Heitens pointed out, you know, she acknowledged that he had this history of poor anger management, along with other things in his history, depression, attempted suicide, and that he would benefit. She said he would likely benefit from a mental health assessment and some intervention. And she put all of that in her sentence and on the record. So why shouldn't we infer, you know, we normally, we have a presumption, right? That courts consider everything that's in front of them and that presumption has to be rebutted. And why shouldn't we infer from those comments that she considered that he had taken a one hour course, but that had not been sufficient to deal with his anger management problems and that he would benefit from further intervention, as she said. Well, I think this court's precedent talks about how this court should not be required to guess from the record whether the court. Right. That's why we have a presumption that district courts consider everything in front of them. We don't have to guess. Instead, we look for evidence that they, like, didn't. What's the evidence they didn't do what they were supposed to do? Yes, Your Honor. I see that my time is expiring. You can answer. I believe that the court's precedent talks about whether or not this court has to guess from what's in the record, whether or not the court actually considered it and rejected it. It's certainly possible that that's what happened, that the judge considered this what she may have thought was a minor one hour course, and he needs more. But this court, I believe from the record, is left to guess. Would she have imposed a higher sentence but for this tip that he took a one hour course? If she didn't consider it, would she have imposed a lower sentence or a guideline sentence that both parties asked for? I think that's the guessing that this court is left to do, because it's not clearly articulated on the record whether or not this is something that she considered or not, or if she did consider and rejected it. Thank you. We'll hear from the government. May it please the court. Eleanor Herney on behalf of the United States. I'd like to begin by starting with what Judge Heightens identified, that this is a tough case. It was a tough case to prepare to argue for, and it was a tough case to write the brief for, solely because as you identified, it is a very thorough record. And so we're really looking at a question here of whether, when we look at the totality of the record, is it enough? Doesn't that make it an easy case? There's lots of evidence and she said lots to support her sentence. There is. And then once I began researching even deeper and getting into the quandary of consider versus address and patently obvious and where everything falls under the Fourth Circuit's precedent, I believe that in this case, if we look at the totality of the transcript, if we look at the exchange between counsel and the court, and if we look at the arguments that were articulated, the bases for the sentence imposed, and the fact that the district court confirmed that it considered all of the 3553A factors. Well, it would strike me that counsel would be almost asking for a bright line test here, that if you have this argument, you have to check this argument, you have the district judge has to go in this box and check that all line by line. I don't think that's where we are in our jurisprudence on sentencing. I mean, I was a district judge and it comes at you fast and furious sometimes. This is what this case looks like. She gave a pretty good narrative to me about what she thought about the whole case. It was pretty thorough. But we're not at a bright line rule, are we? I would agree with that, Judge Floyd. And I think that the court, the Fourth Circuit and the Supreme Court, has been clear that we don't mechanically and robotically tick through the 3553A factors. And that we can look at the context and that we can not only find, consider, or address met through express rejection, acceptance, or consideration of arguments, but we can also look at the context. We can look at the entirety of the transcript. In terms of identifying why this is hard, I think we do, but I just want to make sure we can agree on some premises. So you're not arguing, because I don't read your brief as saying, that his rehabilitation or poor conditions arguments are frivolous. You're not arguing those are legally frivolous arguments, right? That's correct, Your Honor. Okay, because we've said you don't have to explain why you reject frivolous arguments, but those aren't frivolous arguments, right? Second, you say in your brief that Section 3553A does not require courts to consider poor conditions of pretrial detention. That's different from saying that they can't. And you're not arguing that they can't, are you? Agreed, Your Honor. I'm no, I am not aware of any prohibition on considering that. And if a court can consider it, if a defendant raises the argument that you should consider it, the court has to consider whether to consider it, right? I mean, it could say, I don't think, I mean, the district court, unless 3553A mandates it, the district court could say, I hear what you're saying, and I'm terribly sorry that that happened to you. We should look into that. But I don't think that's appropriate in deciding how long your criminal sentence could be, right? I would agree with that, Your Honor. But the court could also say, actually, I think that is a good argument. I mean, I guess, would it be procedurally unreasonable for a district court to give a lower sentence because of harsh conditions of pretrial confinement? I would say, Your Honor, based on the status of the law, and specifically looking at United and expressly leaves that question open, I don't think it would be procedurally unreasonable for the court to do that. To do that. OK. And then last but not least, in terms of framing, in terms of harmless error, I will confess that I find it extremely confusing how you could have harmless error in this context, because the idea of harmless error is, the error is you didn't do a good enough job making sure that you consider the defendant's non-frivolous arguments. And we would say it's harmless. It just seems weird that this is the kind of violation that even could be harmless error. Now, I think what you can easily say is, if you do a good enough job on balance, which I understand to be the thrust of your argument, you say that's not error, right? Perfection is not the goal. The goal is to be adequate to avoid error. But once you conclude it is error, it's very weird to me to say that there is error, because the district court, for all we know, was not considering a non-frivolous argument, but it's harmless. I just don't even know how harmless error works in that context. Because the error is the error of not considering it, and I don't know how it could be harmless to consider something that's not frivolous. And I absolutely understand that perspective, Your Honor. And it's something, as I indicated, it is a tough case, and that's one of the things that I've struggled with. And I am thankful to Mr. Compton for invoking shields before I had to be the one to invoke it. But I do believe that, at least in the case, and I think we can separate out the pre-trial conditions of confinement from the anger management slash rehabilitation. Because I think in terms of the pre-trial conditions of confinement, given how fact-bound that would be, it is a harder argument to say, you know, it would be harmless error. Do you know if you're in your district, I thought, I think we've had an opinion recently, these cases keep coming up, and I'm sure they're very frustrating for district court judges. I'm sure they're very frustrating for litigants on both sides. They're frustrating for us too. I thought we had a published opinion recently that said, you know, there's a really easy solution to this problem, district court judges, which is that before you pronounce the sentence, you look at defense counsel and say, do you believe that you have any arguments that I have not yet addressed? And if they say no, congratulations, any issue now is forfeited under federal rule of criminal procedure 52B. Are we doing that in this district? And if not, why not? It seems like the easiest solution in the world is to say to defense counsel, is there anything you think I haven't addressed? Your Honor, this is actually something that defense counsel, appellant's counsel and I did briefly address just discussing, and it is not. I am familiar with the opinion and politely, that is above my pay grade. I understand. I understand. But it is not something that's become a routine practice. Because it really feels like a lot of these cases would just go away if district judges would just say those words. Great. OK. So what's your best argument? So Judge Rushing, we've, candidly, I would say, and I'm sure you're being even nicer about it, but I don't have to because I'm not standing at the lectern. I think our opinions in this area are all over the map and many of them are inconsistent with each other. And so I understand why you have a hard time reconciling all of them. But I agree that we generally say consider or address. But we also have these opinions that say that the record has to be clear why the district court rejected each of the non-frivolous arguments. So how, based on this record, let me identify what I think is the biggest concern. Judge Grove says over and over again, and I totally understand why she said this, I'm really concerned that your client has a real serious anger management problem, right? And it seems like that was a significant thing driving the sentence that she gave, which seems totally fair based on the facts of this case. Which does make his argument that I've at least done something to try to address it a pretty serious counter-argument that responds pretty directly to one of the district court's primary concerns about him. And I don't see the district court even acknowledging the existence of that fact anywhere, much less explaining why the court was unpersuaded. Now, let me posit further. If Judge Grove had just said that was a one-hour class online and an iPad, it is not nearly enough to overcome all of this other stuff that I've seen about you. I'm sure that would be enough. I will posit that that would be enough. But the district court never said anything like that, and it never even acknowledged the awareness that he had done it, that I'm aware of. So, your honor, in that capacity, I would agree with you that there's nothing expressly on the record, but it doesn't need to be expressly explained away, right? We can look at the- But how do I know that the district court, at the moment it decided, again, at the moment it decided to vary upwards two years above what the government was asking for, that it was actually like, you know, if I'm going to drop the hammer on him for his anger management, I should at least consider or give him some credit for that he has at least now tried to do something about it. Where is the evidence that in that moment the district court was aware of that fact? Well, your honor, I think that we can look at the fact that the district court did state that it had considered, and I know that that is very routine language, but that it considered all of the arguments and the sentencing. We've got a whole bunch of cases that district courts can't immunize themselves from appellate review by saying, I've considered everything you said. Absolutely. And I think beyond that, the district court did also engage with Mr. Hall during his allocution regarding the prior instances of domestic violence. And in that, she acknowledged that, you know, there was a lot of anger infused in those incidents. Counsel raised during his argument at sentencing the fact that his client had made these efforts. It was interwoven throughout that sentencing hearing. And I think as Judge Rushing pointed out, you know, we can look at this context where we have numerous domestic violence offenses, violence against women over a relatively extended period of time. And then we can look at, you know, Mr. Hall's acknowledgement that that was due to anger. And then the very recent, admittedly, it wasn't an effort, but it was a one hour online self-directed course on which he got, I believe the record reflects a 90%. And I think that that's a situation where it's patently obvious on the record why that would have been rejected. Do you agree with the sort of major premise of that? Or this question that assumes that anger management was a major driving factor behind this sentence? The district court seemed to spend a lot of time talking about how this could have been an attempted murder case, right? That this defendant is lucky he didn't kill someone. And she was very concerned about his, the incident. And spent a lot of time talking about his criminal history, which included violence and these sorts of related problems. And then when it came to personal characteristics, she mentioned, you know, not only obviously the criminal history, but that not much work and a lot of crime. And she acknowledged his anger management and the other, his anger problems, not managing it, and other issues. But you seem to just accept the premise of the question, which is that, you know, she sentenced him largely because he has anger problems. Is that, do you accept that premise? No, Your Honor. I do believe that it was a component of a major portion of the sentencing rationale, which was the criminal history and the personal history and characteristics. Looking at how, you know, his personal history and characteristics and the issues with anger management interrelated with his criminal history. But at the end of the day, the driving force as the district court identified at the sentencing hearing was the offense conduct. The nature and circumstances of the offense, including details that Mr. Hall actually added at sentencing during his allocution. When he explained that, you know, prior to the incident, he had been out drinking and smoking and had then gone. And, you know, the incident occurred after that point. And the district court, as I think has been well established today, was heavily focused on the fact that if one of the bullets had been, you know, a little bit to the side, this would not have been a 924 C case. It would have been a murder prosecution. And so while I agree that the district court certainly considered, you know, his personal history and characteristics and the issues with anger that are infused in parts of his personal history and characteristics, Judge Rushing, you did accurately point out that I don't agree with that premise. And thank you for raising that. So do you think that the better way to resolve this is on the patently obvious issue or on the central thesis? Because I will confess, I have a lot of sympathy for our central thesis cases, but I'm not really sure what the central thesis. You know, like we have cases that say, like, if there's, if you address a central, and that seems right, because if the thing that ties together all of the arguments is one thread and you say, here's why I don't buy that thread, then that arguably explains why you're rejecting every one of the defendant's arguments. But just in terms of the anger management court specifically, do you think patently obvious or one central thesis is the less bad way to affirm in this case? The stronger argument I would say is patently obvious. That it's patently obvious why the district court did not find that persuasive and did not give a lower sentence because of that? Yes, Your Honor. And then what about the conditions? I would, I think I would lean the same way in terms of patently obvious. I think that we can look at the context of it. And, you know, I think the other difficulty here that I think was acknowledged, I believe, Judge Rushing, you may have raised it, is that, you know, how these conditions of confinement, the issue was raised, how it was presented in the sentencing memo, and how it was presented at argument, was, you know, these things occurred. And that distinguishes it in some respect from United States v. Peterson, the case in which this court, unpublished, looked at a situation in which a district court had not addressed a claim made below, supported by medical evidence, including records of multiple surgeries, and a potential future amputation of a pinky that had resulted... So in that case, like, it's dangerous for me to be confined here, as demonstrated by the fact that my health needs are not being met, and they're going to get worse, right? I think these conditions cases we've seen mostly recently, to me, have all been like, well, they're going away now. But the COVID cases, like, don't send me to that jail. Everyone who goes to that prison gets COVID and dies. Send me to that prison for less amount of time, was an argument that people frequently made during that era. But this is, I take your point, that I just, that's more like, don't send me somewhere where things bad will happen. You should send me less time there, because something bad is going to happen to me if I go there. Whereas this is a different argument. This is about some bad things have already happened to me, which, in a sort of Los Angeles v. Lyons style, aren't remediable at this point. But you should give me less time going forward, because of the bad things that happened to me in the past. Which is just sort of an atypical case, I'm realizing. It's an interesting case, for sure. And I think that, you know, the argument, as it was just articulated, is a few steps further than the argument, as it was raised before the district court, right? As it was raised before the district court, it was that these things happened, and it wasn't necessarily tied to any, anything. And so in- Or any of the 3553 factors. Like, how does this bear on any of the 3553 factors? Or really a request for relief, other than that it was in the section regarding, this is my argument regarding sentencing. And I think, as you pointed out with Peterson, there was that element of medical treatment. But there was also this argument of, this is a continuing, lifelong, ongoing punishment. And that was part of the analysis there. Like, every day I spend in prison is a day that I spend not getting adequate medical care. And like, that's part of the punishment that I suffer, that makes me different from other defendants, who would, like, an additional harm for me. Sure, you know, the future loss of my pinky, that's something I'm not going to be able to get back. And you should sentence me to less time with consideration of the fact that I'm going to live with this for the rest of my life, right? And that was a fully articulated argument regarding why that should be considered as it related to sentencing. Whereas here, what the district court had was a statement of something that had occurred at the Eastern Regional Jail, which is where the, Mr. Hall was staying, the United States Marshal's contract with. And Judge Groh expressed concern over what had occurred. And, you know, indicated that she would also like to really know how that had happened, which I think is a reasonable response to how that was raised. And beyond that, Your Honor, and let me start my outline and make sure I'm hitting everything very quickly. I think as you've articulated, one of the arguments that can be considered here when we're looking at whether or not, in the totality of the record as a whole, the district court adequately considered and then explained the basis for the sentence that was imposed is the entirety of the sentencing, including whether or not the district court engaged in questioning, whether the district court engaged in the argument, what the district court stated and did not say when it was imposing the sentence and stating the 3553A factors. This is not a case where, you know, the district court imposed a sentence after hearing about mental health rehabilitation and said, and I believe that the defendant would benefit from the opportunity to receive for the first time in his life mental health treatment. The fact that he had taken this one hour course isn't inconsistent with receiving formal intervention or formal mental health treatment. Now, one thing that did come up and that I'd like to briefly just circle back to, Post Shields harmless error is a lot harder for the government, at least as it's articulated. It's a bit of a boulder up a hill and it is a difficult concept. I think it's easier in the concept of the anger management course, right? Because we have this one hour certificate that doesn't contradict the district court's findings or the sentence imposed. And then we have all of these express findings as they relate to sentencing. And I think that we could look at that and see even if the district court didn't expressly state, I am rejecting this, or I've considered it and I don't find it particularly useful, it would be highly unlikely to have any injurious effect on the sentence. It is more difficult in the concept of the conditions of confinement because there it's really, was it considered or was it not? And as you articulated, If we decide it wasn't considered, it's not clear how that could be harmless. If we're saying the district court, you have to consider it and you have to expressly say further than the district court did here, which as has been identified today, was a very thorough sentencing. Four pages of a transcript versus two paragraphs is always a nice record to have. For those reasons, Your Honor, and looking at the record as a whole, the sentencing transcript, the memos, the arguments of the parties, the government would submit that the district court considered all of the non-frivolous arguments that the district court explained the sentence imposed, didn't erroneously consider or fail to consider the 3553A factors and that the sentence that was imposed was procedurally reasonable and we would ask that the court affirm. If there are no further questions, I believe I can cede 20 seconds. Thank you. Thank you. Thank you, Your Honor. I want to respond to a couple of things. I want to dispute any suggestion that I think any of these arguments were not tied to or related to any 3553 factors. I think the both issues that we're dealing with clearly go to personal history and characteristics and I think that it was articulated that way, both in the oral argument and both in the sentencing memo. I also think that- Well, it's a little, you know, I read the memo and I obviously read the transcript of the sentencing argument and, you know, it was said, you know, he contracted COVID, he had this attack, you know, that's relevant to sentencing, I guess was the implication. There was no argument made about why it's relevant, how it applies. Now, we can infer reasons, right? It makes sense that it's, you know, the court can understand what counsel's saying in the moment. Everyone in the room understands what's being suggested. But doesn't that same reasoning apply to the district court's explanation? That everyone in the room understands what's going on and the context and that she read everything and we should be able to infer something from what she says too. If we're going to read into counsel's statements, all these, you know, understandable arguments that weren't clearly articulated, but were probably intended. I mean, why shouldn't we be doing the same for the whole proceeding? And it seems to be a bit of a, a bit of a strange double standard. Well, I guess I would respond in two ways, Your Honor. I believe it was clear in the sentencing memo that there was one section devoted to the nature and circumstances of the offense, which I think the court spent a great deal of time on. There was another section in the sentencing memo devoted to personal history and characteristics. And we also mentioned in there 3553B and the relation to what was 5K 2.0 and how the sentencing guidelines don't adequately take into consideration, particularly under 924C, which has just a straight at 60 months and no other consideration. So I think that that was clear and there doesn't need to be any inference there. And then also, I think that, again, I refer back to this Perez-Paz case from 2021, where this court acknowledged that the district court failed to address four of the defendant's sentencing arguments and concluded by saying that the district court failed to consider these arguments because in explaining its sentence, the district court neither acknowledged nor provided any explanation for rejecting it. And that was quoting from USV Webb. I agree that this is a, it would be a simple solution from the court. I think Judge Heightens indicated, you know, I'm sorry that this happened to you or I think you need some anger management and this one hour course that you took is not sufficient. But, you know, we made this clear this week. We had a sentencing memo. There were no other attachments to that memo besides the pictures of the defendant with all of his injuries, besides the transcript and the certificates from the other courses that he got. So can I ask you about the other courses? Because you did, there was a, I think, an electrical safety course and a CPR course. Are you resting only on failure to address the anger management? Or do you think all of those needed to be addressed? I don't. Candidly, Your Honor, I don't think the court would need to address all of them. But clearly there was discussion about the defendant's anger issues. And I think that the court either, again, we have to guess either the court considered that or rejected it or didn't consider it at all. It was anger issues. So the defendant were clearly a concern for the court. Right. And, you know, you acknowledge that you mentioned a case where we identified four issues, right, that the court didn't explain or address. But the overarching standard we're applying is a we, it's on review, we have to be able to understand why the district court did what it did so we can review it. And it really matters, it would seem, what the supposedly overlooked arguments are. That if the court gives a long explanation for why it did what it did and there's one sort of minor thing that they didn't specifically mention, maybe we can still review that because we understand why the court did what it did. And we, and, you know, because the court didn't mention something, we understand that it didn't, wouldn't have changed things. But that analysis might be different in a different context where there's four more significant issues. And it's, that seems to be a reason why it's, you know, from case to case, there's some variance between, you know, with how we talk about these. But the overarching standard, right, is that we have to be able to review and understand what the court did so we can ensure that it was appropriate. Isn't that right? That's correct, Your Honor. And I think if the only issue that the court didn't address was whether or not the defendant's electrical safety course had any bearing on the, on the court sentence, I think from, you know, if we take, listen, if we take what the government was arguing, the totality of the sentencing, I don't think that we would be here. But that's not, as the court has suggested, these particular set of facts and what we're not sure as to whether or not the court considered or didn't consider with regard to these specific issues, I think is what, is what plays here. So I wanted to make that clear. I, I also dispute that this, any suggestion that the district court made it patently obvious that it considered these arguments and rejected them. I don't believe that the district court engaged counsel on either side with regard to any of these issues that we're discussing here. And I, I, in the moment and in, in, on the brief, I took the, the court statement as merely rhetorical. And I see my- Let me ask you this. Yes, sir. We banded, we banded the word considered around. How about, can we use the word aware? Can we get Bowers aware of something like anger management? I mean, how, how, how can we say from this record that that judge was not aware of the fact that he took an anger management course? I mean, given all she said, how can we? I, I don't think we can take the word aware, Your Honor. I don't think that that would be appropriate because then I think it would, it would allow a district court to just rattle off the 3553A factor and say, I considered this, that, and the other thing. Let's go a little further. If she's aware of it, obviously she's, she's had, has to consider it. And in fact, she just doesn't say anything about it, given this whole record. It just doesn't make a lot of sense to me in this, in this case. Well, again, I, I don't, I don't know that we could say if the district court was aware of a particular issue that they necessary, that we could say that the district court considered it in terms of a higher or lower sentence. And then I think, again, that brings us back to the issue about, well, if we can't say for sure, then that leaves this court, even, you know, looking at the record and even if the court can make some inferences, which, again, I don't think, I think that the case law requires the court to non-frivolous arguments, to acknowledge them, to say that they've considered them and why they rejected them. If we're just saying, if we allow the court to just say, well, I'm aware of it, then a reviewing court, I don't believe can make a decision one way or the other. Did this district judge consider it in terms of a higher or lower sentence and either dismiss it or reject it as not important or consider it? And that's why they gave the sentence that she did. So, for example, I don't know that Judge Groh, and I think I mentioned this before, would not have gone higher but for this argument. But the court is left, I think, to guess on that. Well, I guess I've been doing this too long because it just strikes me in this particular case, although magic words aren't used, we send the case back down there, we're going to get the same result that we've wasted time and energy and money to do that just because we didn't use the magic word I considered. And I understand that, Your Honor, and it may be true that if the court vacates the sentence, which is what we're asking, and send it back, it may end up in the same result. But I think that's the reason why we have these precedents that say we, as the reviewing court, need to know what you relied on, what you considered, and what you rejected. And I think the court's statement also goes to the harmless error argument as well, which I agree in this context, and I think Shields lays that out, that there's error in this regard and it can't be harmless. I'm over my time. The court has any other questions? Thank you, counsel. Thank you. We'll come down and greet counsel after our courtroom deputy adjourns court for the day. This honorable court stands adjourned until tomorrow morning. God save the United States and this honorable court.
judges: Allison J. Rushing, Toby J. Heytens, Henry F. Floyd